UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| NANCY M. MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 4:08-CV-1 |
| v. | ) | |
| | ) | Mattice / Lee |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This action was instituted by the Plaintiff ("Plaintiff") pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying the Plaintiff a period of disability and disability insurance

benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the Act").

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the

Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of

Plaintiff's motion for judgment on the record [Doc. 15] and Defendant's motion for summary

judgment [Doc. 17].

For the reasons stated herein, it is **RECOMMENDED** that: (1) Plaintiff's motion for

judgment on the record [Doc. 15] be **DENIED**; (2) Defendant's motion for summary judgment

[Doc. 17] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action

be **DISMISSED**.

## Administrative Proceedings

Plaintiff filed an application for DIB on July 6, 2005, alleging she became disabled on July

15, 2003 (Tr. 14). After Plaintiff's application was denied initially and on reconsideration (Tr. 29-

34, 38-40), she requested a hearing before an ALJ. Following the hearing, the ALJ issued a decision on July 28, 2007, finding Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs (Tr. 14-22). On October 9, 2007, the decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 6-8).

## **Standard of Review**

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir.

2

1986).  The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Garner*, 745 F.2d at 388 (citation omitted).

## How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.

> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii),

3

(d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.

In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

## ALJ's Findings

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2007.

2.  The claimant has not engaged in substantial gainful activity since July 15, 2003, the alleged onset date . . . .

3.  The claimant has the following severe impairments: supraventricular tachycardia and major depressive disorder . . . .

4.  The claimant does not have an impairment or combination of

4

impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work.

6.      The claimant is unable to perform any past relevant work . . . .

7.      The claimant . . . is defined as an individual closely approaching advanced age, on the disability onset date amended to coincide with her 50th birthday . . . .

8.      The claimant has a least a high school education and is able to communicate in English . . . .

9.      Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled" whether or not the claimant has transferrable job skills . . . .

10.     Considering the claimants age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2003 through the date of this decision.

(Tr. 16-17, 18, 21-22).

## Issues

The issues presented by Plaintiff are whether the ALJ committed substantial legal error when he allegedly: 1) failed to develop the record; 2) confused the assessment of Plaintiff's RFC with a medical source statement; 3) gave determinative weight to only a portion of Dr. Gupta's report; 4) questioned Plaintiff's credibility; and 5) abused his discretion. [Doc. 16 at 1-5, 7-8 ].

5

**A.**     ***Plaintiff's Age, Education, and Past Work Experience***

Plaintiff was 52 years old at the time of the hearing (Tr. 271). She had the equivalent of a high school education, having earned a GED (*id.*). She had past relevant work running her own laundry business (*id.*).

**B.**     ***Medical Evidence***

Only the most relevant medical evidence will be briefly summarized herein. Whether or not the medical evidence is summarized herein, however, all of the relevant medical evidence has been reviewed and considered in reaching the recommendation set forth herein.

Dr. Vijay Pethkar, M.D. performed a pulmonary function analysis of Plaintiff on April 15, 2005 (Tr. 165). Dr. Pethkar's impression was that there was no evidence of obstructive ventilatory impairment. Dr. Pethkar stated the lung volumes were suggestive of a very mild restrictive impairment (*id.*).

J.D. Turner, M.D. saw Plaintiff on May 19, 2005 when she underwent a cardiolite stress test (Tr. 244). Dr. Turner's assessment was an overall low probability for significant coronary disease at the time (*id.*).

Joe G. Allison. M.D. completed an assessment of the Plaintiff's RFC for the state agency on September 9, 2005 (Tr. 208-215). Dr. Allison indicated Plaintiff could lift and/or carry 20 pounds occasionally, ten pounds frequently, stand and/or walk for about six hours, with normal breaks, in an eight-hour workday, and sit for about six hours, with normal breaks, in an eight-hour workday (Tr. 209). Dr. Allison also indicated Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl (Tr. 210). Dr. Allison further indicated Plaintiff should avoid extreme cold, extreme heat

6

and working around hazards, such as machinery or working at heights (Tr. 212).  Dr. Allison also indicated that Plaintiff's pain was partially credible and would further reduce her RFC  (Tr. 215).

A psychiatric review technique form ("PRTF") (Tr. 216-229) and an assessment of Plaintiff's mental RFC (Tr. 230-32) was completed for the state agency by a psychologist, whose signature is unintelligible, on September 9, 2005 (Tr. 216).  The psychologist indicated Plaintiff had an affective disorder, namely a depressive disorder (Tr.219).  The psychologist indicated that Plaintiff had a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (Tr. 226).  On the mental RFC, the psychologist found Plaintiff's mental ability to engage in work or work-related activity was not significantly limited, except that Plaintiff's ability to maintain attention and concentration for extended periods was moderately limited and Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was also moderately limited (Tr. 230-31).  The psychologist indicated Plaintiff could perform simple and detailed tasks over a full workweek, can interact frequently on a one-to-one basis with the general public and meet basic social demands in a work setting, and could adapt to changes in the workplace or work setting (Tr. 232).

Philip Laney, M.D. saw Plaintiff on September 25, 2006, for a follow up related to her cardiac condition (Tr. 234-35).  Plaintiff's problems included: (1) supraventricular tachycardia ("SVT"); (2) obstructive sleep apnea; (3) hypertension; (4) hyperlipidemia; and (5) chronic left bundle branch block (Tr. 234).  Dr. Laney's impression was stable cardiac status with no evidence of any recurrent SVT of significance (Tr. 235).

Dr. Sandip Shukla completed a mental RFC assessment on November 30, 2006 (Tr. 256). Dr. Shukla indicated Plaintiff was moderately limited in her abilities to remember locations and work-like procedures; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting. (Tr. 256-57). All of the remaining aspects of Plaintiff's mental ability to engage in work or work-like activity, except for two which Dr. Shukla indicated he could not assess, were indicated to be not significantly limited (*id.*).

A cardiac RFC questionnaire signed on behalf of Dinesh Gupta M.D. on December 8, 2006 appears in the record (Tr. 250-53). Dr. Gupta indicated his diagnosis of Plaintiff was questionable PSVT and anxiety (Tr. 250). He indicated Plaintiff's New York Heart Association functional classification was one (*id.*). He indicated Plaintiff's symptoms included chest pain, anginal equivalent pain, shortness of breath, fatigue, palpitations and dizziness (*id.*). He also indicated Plaintiff did not have marked limitations of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity (*id.*). Dr. Gupta indicated Plaintiff was capable of low stress jobs because increased stress resulted in anxiety which caused chest pain (Tr. 251). Dr. Gupta further indicated that emotional factors contributed to the severity of Plaintiff's subjective symptoms and functional limitations (*id.*). He also indicated Plaintiff's experience of cardiac symptoms would occasionally be severe enough to interfere with the attention and

8

concentration needed to perform even simple work tasks (*id.*). He indicated Plaintiff could stand and/or walk, with normal breaks, for about two hours in an eight hour workday and could sit for at least six hours, with normal breaks, in an eight hour workday (Tr. 252). He also indicated Plaintiff would need to sometimes take unscheduled breaks of 15 to 30 minutes on an occasional/daily basis (*id.*). Dr. Gupta also indicated that Plaintiff could occasionally lift and/or carry up to 20 pounds, occasionally stoop, crouch/squat and climb stairs and rarely climb ladders (*id.*). He also indicated Plaintiff should avoid concentrated exposure to soldering fluxes, solvents/cleaners and dust (Tr. 253).

### C.    *Hearing Testimony*

#### 1.    *Plaintiff*

Plaintiff testified as follows: Plaintiff last worked on July 18, 2003, when she quit working because her fingers were getting numb and going to sleep (Tr. 271). Plaintiff transported laundry back and forth as the operator of her own laundry business (Tr. 272). She continues to do some of that now – she works about six hours per week – three hours two days per week (Tr. 273). Plaintiff testified concerning the work she did before she ran her own laundry business (Tr. 273-76). Plaintiff stated she still needs money and that is why she is trying to work as much as she can (Tr. 276). She has a car and a driver's license and is able to drive, although she stated that sometimes her fingers go to sleep and she needs to stop and wiggle them awake (Tr. 276-77). She does household chores, but at a slower pace because certain activities make her short of breath (Tr. 277). She is depressed and stays tired because she does not sleep well at night due to sleep apnea (*id.*). She uses a C-PAP machine which helps her somewhat (*id.*).

Plaintiff stated the problems that keep her from working are shortness of breath, not being

able to sleep at night, and the fact that her hand, particularly three of her fingers, go to sleep (Tr. 279). Plaintiff stated she has been told she has carpal tunnel syndrome and was once told she needed surgery, but she has no insurance (*id.*). Plaintiff stated she cannot do work which requires her to stand up because her legs swell up (Tr. 280). She has been advised to keep her legs elevated (Tr. 280). Plaintiff stated she has a heart problem and that she gets short of breath and her heart flutters (Tr. 291). When her heart flutters, Plaintiff stated that she experiences pain for 15 to 30 minutes, and then it will take her a couple of days to "get back halfway going." (Tr. 293). Plaintiff stated her heart flutters occur occasionally, once or week or sometimes two or three times a month (*id.*). Plaintiff estimated she could lift "maybe ten pounds." (Tr. 294). Her carpal tunnel causes her to have problems holding onto things (Tr. 294-95). She has trouble sleeping through the night because of her sleep apnea (Tr. 295). Plaintiff takes naps during the day (Tr. 295). She stated she tries to take a nap around noon (*id.*). Plaintiff has been treated for depression (Tr. 295-96). Plaintiff stated she has 15 to 20 bad days per month where she would simply like to be by herself (Tr. 298).

### 2. *Vocational Expert*

Mark Boatner testified as the vocational expert ("VE") at the hearing (Tr. 307). The VE was shown a report from Plaintiff's treating psychiatrist, Dr. Chuckula (*id.*).[1] The VE stated if Dr. Chuckula's report were fully credited it would support that Plaintiff had the ability from a non-exertional standpoint to do at least simple, unskilled work (*id.*). The VE stated Dr. Chuckula's report would eliminate skilled types of jobs and that Plaintiff had mostly work at the semi-skilled level (*id.*).

---

[1] Although the name Dr. Chuckula appears throughout the transcript of the administrative hearing, it is believed this refers to Dr. Sandip Shukla.

## Analysis

### A.     *Duty to Develop the Record*

Plaintiff contends the ALJ did not develop the record as he promised to do [Doc. 16 at 1-3].
Plaintiff asserts the ALJ promised during the hearing to contact her treating psychiatrist, Dr. Shukla,
and ask him for more evidence/clarification of her condition [*id.* at 2-3].   The Commissioner
responds Plaintiff wanted the ALJ to re-question Dr. Shukla about Dr. Shukla's opinions set forth
in evidence that had been submitted by Dr. Shukla and was already in the administrative record
[Doc. 18 at 6].  The Commissioner asserts this is not an issue of development of the record and notes
there is no requirement that an ALJ re-reweigh or re-visit evidence in the record [*id.*].

It is the duty of the ALJ to develop a reasonable record and the ALJ must look fully into the
issues.  20 C.F.R. §§ 404.944 and 416.1444; *Johnson v. Sec'y of Health and Human Servs.,* 794 F.2d
1106, 1111 (6th Cir.1986); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. Nov. 18, 2004);
*Born v. Sec'y of Health and Human Servs*., 923 F.2d 1168, 1172 (6th Cir.1990).  The burden of
providing evidence complete and detailed enough to enable the Commissioner to make a disability
determination, however, rests with the claimant.  *Landsaw v. Sec'y of Health and Human Servs*., 803
F.2d 211, 214 (6th Cir.1986).  In making the disability determination, the ALJ does not bear the sole
responsibility in the investigation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987) ("It
is not unreasonable to require the claimant, who is in a better position to provide information about
his own medical condition, to do so").   After a review of the record evidence, it is within the
province of the ALJ to decide when there is enough information.  *See* 20 C.F.R. § 404.1512(e) (if
the evidence is not sufficient, the agency asks for additional information).

During the hearing, the ALJ stated Dr. Shukla's assessment had not been "clear cut" and:

> Maybe that warrants me to look at it a little more intensely since he was willing to fill out a form maybe I ought to send him a form of my own that has a little more information on it that might help me. I might think about doing that . . . Then I'll ask him again and see if I get a little different answer.

(Tr. 301-02). The ALJ further stated "[t]hat's why I'm trying to justify here getting some additional information from Dr. [Shukla] . . . ." (Tr. 304). With regard to Dr. Shukla's opinion, the ALJ also stated "I'll go to him and ask him to reassess your limitations worst case scenario on your depression issues but I have read his notes and I have read his report here today and as has been pointed out it should not preclude basically unskilled work . . . ." (Tr. 314). Later on in the hearing, the ALJ stated with regard to Dr. Shukla:

> I think you're just flat out depressed. Seriously depressed but I can't override what your doctor has written here. The only way I can do it is go back to him and ask for clarification and see if he can give me more information . . . . I do believe the depression is keeping you locked down very seriously but it's not what your doctor has reported to me and I'm going to try to go to him and get a little more information . . . .

(Tr. 316).

Plaintiff complains there is no information in the record the ALJ actually contacted Dr. Shukla and tried to get additional information. Plaintiff has not, however, alleged there is evidence from Dr. Shukla that has not been included in the record. Although the ALJ suggested he might re-contact Dr. Shukla, his decision shows the ALJ apparently changed his mind and determined that Dr. Shukla's mental RFC assessment was entitled to controlling weight regarding the claimant's mental RFC as it was well supported by his treatment notes and the evidence of record overall (Tr. 20). Contrary to Plaintiff's assertion, the ALJ never stated additional medical evidence was needed and he did not state he was sending Plaintiff to Dr. Shukla for further evaluation. At most the ALJ

stated he would consider contacting Dr. Shukla to see if he could obtain further clarification of Dr. Shukla's assessment that was already in the record. However, the ALJ apparently changed his mind when writing his decision.

In certain circumstances, an ALJ may have a special duty to develop a full and fair record when an unrepresented claimant who is unfamiliar with the hearing procedures appears before him. *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1172 (6th Cir. 1990) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983)). In this instance, Plaintiff, who had a high school education, was represented at the hearing by a non-attorney representative who was familiar with the Social Security regulations and hearing procedures and the record reflects that a full and very lengthy hearing, during which the Plaintiff was able to understand and respond to the ALJ's questioning, was held. Thus, the record reflects that this case is distinguishable from those that fall within the "special circumstances" of *Lashley* which give rise to a special duty on the part of the ALJ to develop a full and fair record. *See Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275-76 (6th Cir. 2002).

Although the ALJ indicated at the hearing he would consider whether it was possible to have Dr. Shukla clarify his mental RFC assessment, the "ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917). As the decision whether to obtain additional evidence from Dr. Shukla was within the ALJ's discretion, the ALJ did not fail in his duty to fully develop the record.

13

**B.**     *Treating Physician Statements/Medical Source Statements*

Plaintiff's complains the ALJ did not give controlling weight to the entire assessment of Dr.

Gupta. Plaintiff also complains the ALJ improperly failed to distinguish between the RFC

assessment completed by Dr. Shukla and a medical source statement. The Commissioner argues

the ALJ properly considered and weighed the medical evidence and opinions.

The ALJ explained his findings concerning the medical source opinions of Drs. Gupta and

Shukla stating:

> Cardiologist Dinesh Gupta, M.D., saw the claimant twice, in June and July 2005, for cardiac testing due to symptoms of palpitation and for hypertension. A person in Dr. Gupta's office, but not Dr. Gupta himself, completed a medical source statement regarding the limiting effects of the claimant's cardiac condition. The claimant was noted to have a New York Heart Association Class I level impairment, which reflects a patient with no limitation of activities. However, the claimant was also said to need to elevate her legs for to six hours with prolonged sitting and to be limited to two hours of standing and walking per day. Symptoms were said to include chest pain, shortness of breath, fatigue, palpitations, and dizziness, however, Dr. Gupta's records do not document such symptoms or a need to elevate her legs, nor do Dr. Turner's, which are much more detailed. The claimant's primary care physician, Lawrence Shull, M.D., who saw the claimant much more often, indicated the claimant did not complain of chest pain. Dr. Shull's notes are absent of complaints of shortness of breath (other than in March 2005), fatigue, dizziness, or extremity swelling.
> . . .
> Dr. Shukla's treatment notes disclose the claimant improved immediately with antidepressant medication. . . . In March 2005, the claimant mentioned to Dr. Shukla that she had shortness of breath and sleep apnea, but that she does not use her CPAP machine. Dr. Shukla increased the claimant's Effexor, in July 2005, but rarely, if ever, noted significant functional limitations related to the claimant's depression. Thus, I find Dr. Shukla's Mental Residual Functional Capacity Assessment to be well supported by his treatment notes and the record overall. For this reason, I give his medical source opinion controlling weight regarding the claimant's mental residual capacity.
> . . .

As for the opinion evidence, I find Dr. Shukla's medical source opinion to be worthy of controlling weight, as noted above. I give little weight to the form signed on Dr. Gupta's behalf, by an unknown party, because of its unknown authorship and because it is largely, not supported by any objective evidence of record. I do, however, note that the New York Heart Association rating of Class I appears to be well supported by the evidence overall. Such a rating would not preclude the performance of light exertional activity, as assessed by the reviewing physician for the State agency, which I give determinative weight.

(Tr. 20-21) (internal citations omitted).

Applicable regulations state the Commissioner will evaluate every medical opinion and will consider the following factors in deciding what weight to give each opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although a treating physician's opinion typically is entitled to substantial deference, as argued by Plaintiff, the ALJ is not bound by that opinion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The Sixth Circuit has consistently stated the treating source's opinion is entitled to deference only if it is based on objective medical findings, *see, e.g.*, *Warner*, 375 F.3d at 390; *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993), *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and not contradicted by substantial evidence to the contrary. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987).

If the treating source's opinion is not given controlling weight, its weight is determined by the same factors that are considered in evaluating every medical opinion. The ALJ must weigh the opinions of the acceptable medical sources, including the opinions of the treating physicians and the state agency medical sources, as required by applicable regulations, and resolve inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4),

(f)(2)(i); *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings."). With respect to weighting the opinions, the Sixth Circuit has held the opinion of a treating physician generally is entitled to greater weight than the contrary opinion of a consulting physician who has examined the claimant on only a single occasion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); *Hardaway*, 823 F.2d at 927. An ALJ may, however, discount a treating physician's opinion based on an opinion of an examining or a reviewing physician in appropriate circumstances. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990). The responsibility for weighing the record evidence, including conflicting physicians' opinions, and resolving the conflicts rests with the ALJ. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

It is well-settled law in the Sixth Circuit that if an ALJ does not accord controlling weight to the opinion of a claimant's treating source, the ALJ must apply certain factors in determining what weight to give the opinion. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 546-47). Pursuant to the regulations, the ALJ:

> is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.

*Id.* (quoting 20 C.F.R. § 404.1527(d)). The regulation also provides the SSA "will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion." *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ must give good reasons for the weight

given a treating source's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir.

2004); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461 (6th Cir. 2005). This reason-giving

requirement is "clearly procedural ensuring 'that the ALJ applies the treating physician rule and

permits meaningful review of the ALJ's application of the rule.'" *Smith v. Comm'r of Soc. Sec.*, 482

F.3d 873, 875 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544). The reason-giving requirement in

§ 404.1527(d)(2) "exists, in part, for claimants to understand why the administrative bureaucracy

deems them not disabled when physicians are telling them that they are." *Id.* In the Sixth Circuit:

> [b]ecause of the significance of the notice requirement in ensuring
> that each denied claimant receives fair process, a failure to follow the
> procedural requirement of identifying the reasons for discounting the
> opinions and for explaining precisely how those reasons affected the
> weight accorded the opinions, denotes a lack of substantial evidence,
> even where the conclusion of the ALJ may be justified based upon
> the record.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

### 1. December 8, 2006 Form

Plaintiff asserts the ALJ erred in only accepting a limited portion of the December 8, 2006

form which was completed by someone in Dr. Gupta's office (Tr. 250-53). Plaintiff objects to the

ALJ's acceptance of the portion of the form that indicated Plaintiff had a New York Heart

Classification or Rating ("NYHA") of one, but the rejection of the remainder of the assessment (Tr.

21). A NYHA classification of one indicates: "No symptoms and no limitation in ordinary physical

activity, e.g. shortness of breath, when walking, climbing stairs, etc." *See*

www.wikipedia.org/wiki/New_York_Heart_Association_Functional_Classification.

The ALJ discussed his reasons for assigning little weight to the assessment signed on Dr.

Gupta's behalf. He noted the authorship of the form was unknown and it was, for the most part,

17

inconsistent with the objective evidence of record. The ALJ also noted the NYHA rating of Class 1 was well supported by the overall evidence in the administrative record (Tr. 21). The ALJ further noted the NYHA rating of Class 1 would not preclude Plaintiff from performing light exertional activity, which was consistent with the assessment of the reviewing physician for the state agency, to which he gave determinative weight (*id.*). The ALJ noted Dr. Gupta saw the Plaintiff only twice, in June and July 2005, and that the limitations and symptoms set forth in the medical source statement signed on Dr. Gupta's behalf well over a year later, were not supported by or consistent with Dr. Gupta's own records or the records of Drs. Turner and Shull (Tr. 20). I find the ALJ adequately set forth his reasons for rejecting a portion of the assessment form.

Plaintiff also asserts that because the ALJ did not accept Dr. Gupta's report, he should have referred Plaintiff for, or requested another, consultative examination from another source [Doc. 16 at 4]. Contrary to Plaintiff's assertion, however, the ALJ explained that Dr. Turner's more detailed findings, as well as the notes of Plaintiff's primary care physician, Dr. Shull, were consistent with the assessment of the state agency reviewer (Tr. 20-21). Thus, there was no need for a further consultative physical examination of Plaintiff.

### 2. *RFC Assessment*

Plaintiff also appears to complain that the ALJ confused Dr. Shukla's mental RFC assessment with a medical source statement. [Doc. 16 at 3]. The ALJ explicitly found "Dr. Shukla's Mental Residual Functional Capacity Assessment to be well supported by his treatment notes and the record overall. For this reason, I give his medical source opinion controlling weight regarding the claimant's mental residual capacity." (Tr. 20). Contrary to Plaintiff's assertion, the ALJ did not confuse Dr. Shukla's mental RFC assessment with a medical source statement. Rather, the ALJ

18

found the opinion expressed in Dr. Shukla's mental RFC assessment was consistent with both Dr. Shukla's own treatment note and the overall evidentiary record and, hence, the ALJ accorded great and controlling weight to the opinion as expressed in Dr. Shukla's mental RFC assessment. I find the ALJ followed the appropriate steps and applied the correct legal standard to weigh the opinions of the acceptable medical sources, as required by applicable regulations, and appropriately resolved inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2) and 416.927(d)(4), (f)(2); *Mullins,* 836 F.2d at 984.

Contrary to Plaintiff's assertion the ALJ improperly failed to distinguish between his RFC assessment and a medical source statement, the ALJ made an appropriate RFC assessment that Plaintiff retained the RFC to perform a full range of light work (Tr. 18).

## C.    *Subjective Complaints/Pain Complaints*

Plaintiff complains the ALJ incorrectly questioned her credibility [Doc. 16 at 4-5].

The ALJ concluded Plaintiff's subjective complaints, including pain, were not fully credible, stating:

> The claimant testified that she is short of breath, cannot sleep at night, and then cannot function the next day. She indicated that her fingers tingle and go numb, her shoulder gives her problems, and her legs swell about midway through the day. Finally, the claimant described events of chest pain and fluttering, with nausea and dizziness, that last 15 to 30 minutes and occur approximately two to three times per month. The claimant described her depression as making her want to be by herself, approximately 15 to 20 days per month.

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

The claimant alleged disability commencing July 2003, but the medical evidence of record does not reflect an onset or worsening of any mental or physical impairment at that time. Cardiac studies obtained, in 2003, reflect essentially normal coronary architecture and functioning, with the exception of a known left bundle branch block. Yearly checkups and doctor visits, in 2003 through 2005, reveal no significant complaints, including no mention of hand or wrist pain, shortness of breath, or chest pain. The claimant apparently had been diagnosed with obstructive sleep apnea and uses a CPAP machine, but there is no indication this treatment is not successful.

The claimant reported shortness of breath with exertion, in March 2005, but both cardiac and pulmonary causes were ruled out with various testing. The claimant was noted to have an episode of supraventricular tachycardia, consistent with her report of a fluttering sensation, during heart monitoring in June 2005. This was treated successfully with medication, and only one further episode of tachycardia was noted, apparently caused by hypokalemia attributed to one of her medications. The claimant's cardiac status was proclaimed clinically stable, in July 2005, by J.D. Turner, M.D., and his follow-up notes reflect no deterioration . . . In September 2006, after the May 2006 episode of tachycardia and hypokalemia, the claimant acknowledged no further significant episodes, but only occasional palpitations. Dr. Turner's notes, which are extensive, reflect, no functional limitations, but rather recommendations that the claimant follow a regular exercise program.
. . .
In addition to the records of the claimant's physical health, Dr. Shukla's psychiatric treatment notes, from September 2003 through August 2005, are in file. The claimant initially sought treatment when she became stressed from caring for her mother who Dr. Shukla indicated had "AD" which I interpret to mean Alzheimer's disease. Dr. Shukla diagnosed the claimant with major depression. He characterized the claimant's domestic stressors as "extreme" and rated her level of functioning on the Global Assessment of Functioning . . . scale as 65 to 75, which reflects no more than mild impairment in mental functioning . . . .

Dr. Shukla's treatment notes disclose the claimant improved immediately with antidepressant medication. The claimant was said to be operating a dry cleaning business along with a restaurant, together with her boyfriend, as well as caring for her sick mother. Her mother died, in February 2005, and Dr. Shukla prescribed Xanax

20

to address the claimant's new symptom of anxiousness. In March 2005, the claimant mentioned to Dr. Shukla that she had shortness of breath and sleep apnea, but that she did not use her CPAP machine. Dr. Shukla increased the claimant's Effexor, in July 2005, but he rarely, if ever, noted significant functional limitations related to the claimant's depression. . . .

The medical evidence summarized above contradicts or fails to support the claimant's hearing testimony on most counts. For example, there is not evidence, since 2003, of treatment for or complaint of carpal tunnel syndrome, and the evidence does not reflect the presence of persistent cardiac palpitations or any associated nausea, dizziness, or fatigue. Cardiac causes of the claimant's alleged shortness of breath have been ruled out, and a pulmonary function test was essentially normal. Based on the claimant's acknowledgment to Dr. Shukla of her failure to use her CPAP machine, this symptom could very well be related to noncompliance with CPAP therapy. Finally, comments by the claimant's treating sources raise questions about the claimant's credibility regarding her work activity – that she was likely also engaged in a restaurant business and perhaps doing ironing work in addition to the dry-cleaning she reported. Overall, I do not find the claimant's subjective reports to be credible, to the extent alleged, given the lack of supporting evidence in the treatment record in addition to references to greater work activity.

(Tr. 19-21) (internal citations omitted).

Generally, a claimant's self-reported claims of disabling pain are not, standing alone, sufficient to establish disability. *See* 20 C.F.R. §§ 404.1529(a) and 416.929(a). First, such claims must be supported by objective medical evidence (*i.e.*, medical signs and/or laboratory findings) of an underlying medical condition and, second, either (1) the objective medical evidence must confirm the severity of the alleged pain, or (2) the objectively established medical condition must be of such a severity that it can be reasonably expected to produce the alleged pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); 20 C.F.R. §§ 404.1529(a) and 416.929(a). However, a plaintiff need not establish objective evidence of the pain itself. *Felisky*, 35 F.3d at 1039.

The intensity and persistence of the claimant's symptoms must be evaluated to determine whether those symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1). Relevant evidence for the ALJ's determination includes the claimant's medical history, statements by treating physicians, medications taken, medical treatment other than medication received to relieve pain or other symptoms, methods the claimant has used to relieve pain, precipitating and aggravating factors, daily activities, and statements by the claimant. 20 C.F.R. §§ 404.1529(c) and 416.929(c). Ultimately, it is the functional limitations imposed by a condition rather than the diagnosis itself which determines whether an individual is disabled. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Thus, a determination of disability based on pain depends in part on the credibility of the claimant. *Id.*; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 467 U.S. 957 (1983).

In determining credibility, the ALJ considers, among other things, whether there are any inconsistencies between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). "Discounting credibility to a certain degree is appropriate where the ALJ finds contradiction among the medical reports, claimant's testimony , and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the ALJ is charged with the responsibility of observing the demeanor and credibility of the witness, his conclusions should be highly regarded. *Id.*; *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

The record reflects the ALJ reasonably considered a variety of relevant factors in assessing

the overall nature and severity of the limitations caused by Plaintiff's impairments, symptoms, and complaints in accordance with the evaluation factors as set forth in SSR 96-7p (Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements) and 20 C.F.R. § 404.1529. The ALJ's specific reasons for his findings on credibility are well-grounded and substantial evidence supports his finding that the record lacked objective evidence to support the degree of limitation Plaintiff alleged. *See McCoy on behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996) ("Subjective claims of disabling pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability.").

Plaintiff specifically complaints about the ALJ's reliance on information in a medical report from Dr. Shukla, in which he reported Plaintiff talked about opening a restaurant with her boyfriend [Doc. 16 at 4]. In his decision, the ALJ stated;

> I noted that the claimant reported to her psychiatrist, in July 2004, operating a restaurant with her boyfriend, which she never disclosed in work reports to the Social Security Administration. This activity reported to her psychiatrist but not to the Social Security Administration reduces the claimant's credibility.

(Tr. 16).

Plaintiff contends the ALJ's reliance on the information concerning the restaurant is not supported by substantial evidence, and is also unfair, because the ALJ never questioned her about it and Dr. Shukla never indicated that she actually worked in or operated the restaurant [Doc. 16 at 4]. One of Dr. Shukla's treatment notes states that "[n]ow [Plaintiff's boyfriend] has opened a restaurant and given up the laundry business. So she works in it." (Tr. 198). A subsequent treatment note states that during a treatment session with Dr. Shukla Plaintiff "vents how [Plaintiff's boyfriend] wanted her to get the beer license for the restaurant she owns now. She had to take firm stand against this and actually withdraw her application due to his inappropriate demands." (Tr.

23

199).  A subsequent treatment noted also states that Plaintiff told Dr. Shukla that "[s]he feels good in her business.  She feels her decision not to let him have liquor license was the correct one." (*Id.*).

Dr. Shukla's treatment notes contradict Plaintiff's contention that Dr. Shukla never indicated in his treatment notes that she told Dr. Shukla she either owned or worked in a restaurant.  In addition, the ALJ set forth a considerable number of additional reasons why he found Plaintiff's subjective complaints not to be fully credible in addition to his concerns regarding Dr. Shukla's notes about Plaintiff's work in and/or ownership of a restaurant.  Even if the ALJ's observations about Plaintiff's alleged work activity at a restaurant are discounted, the ALJ has set forth more than sufficient reasons in his decision to support his conclusion that Plaintiff's subjective complaints were not fully credible.

**D.      ALJ's Hearing Conduct**

Plaintiff asserts the ALJ abused his discretion based upon his conduct at the hearing because "[t]he ALJ was often impatient, critical, and 'cranky' during the hearing and did not ask the VE any questions or allow her representative to ask the VE questions." [Doc. 16 at 5].  Plaintiff further asserts that the ALJ's "treatment of claimant resulted in her being in tears in the hearing.  She became frustrated and asked him if he was calling her a liar." [*Id.* at 6].  The Commissioner responds that although the ALJ did at one point did tell Plaintiff's representative she could not ask the VE any questions because the hearing, which had lasted for an hour and a half, had been "long enough" (Tr. 303), the ALJ did allow Plaintiff's representative to question the VE (Tr. 307-308, 312), and the ALJ also questioned the VE (Tr. 308-310) [Doc. 18].

Although the Plaintiff did ask the ALJ if he was saying she was lying, the ALJ responded, in pertinent part:

No, ma'am. It's just, it's just sometimes you have to determine what part or what level of testimony you give credit to. I would not suggest you were lying, no. Would not do that but don't forget your own perception of something may be different than what others might perceive.

(Tr. 304). Also, at the conclusion of the hearing, the ALJ stated:

I apologize if I seem short. I'm, this hearing has run extremely long, much longer than it needed to and that's probably partially my fault. I should have just moved it along a little bit but at a certain point in time other people are waiting for their hearings and I kind of run short of energy a little bit . . . I understood the case pretty well when you and I got through talking so the last hour has just been sort of adding on, icing on the case, but I heard it all even though I might have seemed a little bit cranky, I listened to every bit of it . . . .

(Tr. 317).

Although the ALJ initially refused to allow Plaintiff's representative to question the VE, both she and the ALJ eventually questioned the VE and Plaintiff has pointed to no question she would have posed to the VE that her representative was unable to ask at the administrative hearing. Further, when Plaintiff asked the ALJ if he was calling her a liar, the ALJ immediately responded that he was not doing so and would not do so. Finally, at the conclusion of the hearing , the ALJ did apologize for any crankiness.

Under the regulations:

An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party. . . If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity. The administrative law judge shall consider your objections and shall decide whether to proceed with the hearing or withdraw. . . If the administrative law judge does not withdraw, you may after the hearing present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge.

25

*Klinger v. Barnhart,* No. CIV.A. 02-1008, 2003 WL 21654994, * 2 (E.D.Pa. July 15, 2003) (quoting 20 C.F.R. §§ 404.940, 416.1440). At least one court has held based upon the plain language of the regulations, that where a plaintiff who is represented at the hearing fails to request the ALJ to disqualify himself during the hearing, such a failure results in a waiver of the opportunity to challenge the ALJ's right to conduct the hearing. *Id.*

Although Plaintiff asserts the ALJ was "cranky" at the hearing and initially refused to allow her representative to question the VE, her allegations do not reach the level of bias or lack of partiality on the part of the ALJ. Moreover, neither Plaintiff nor her representative challenged the ALJ's allegedly improper behavior during the hearing. Plaintiff's allegations against the ALJ simply do not rise to the level of bias or partiality on the part of the ALJ. To the extent Plaintiff challenges the right of the ALJ to conduct the hearing under the regulations, the Plaintiff waived any such challenge to the ALJ's "cranky" demeanor at the hearing by failing to object to his demeanor at the hearing and/or request that he withdraw.

Having reviewed the record in light of the Plaintiff's assertions of error, I **FIND** the decision of the Commissioner denying DIB benefits to Plaintiff is supported by substantial evidence in the record. Accordingly, I **RECOMMEND** the decision of the Commissioner be affirmed.

26

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above it is **RECOMMENDED**[2]:

(1)     Plaintiff's motion for judgement on the record [Doc. 15] be **DENIED**;

(2)     Defendant's motion for summary judgment [Doc. 17] be **GRANTED**;

(3)     Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **AFFIRMING** the Commissioner's decision which denied benefits to the Plaintiff; and

(4)     This action be **DISMISSED**.


s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).